

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**
JUL 2 9 2008
JUL 29, 2008
RONALD A. GUZMAN, JUDGE
UNITED STATES DISTRICT COURT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 08 CR 211 |
| v. ) | |
| ) | Judge Ronald A. Guzman |
| MAURICE JACKSON ) | |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant MAURICE JACKSON, and his attorney, WILLIAM WALTERS, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The indictment in this case charges defendant with sixteen counts of bank fraud in violation of Title 18, United States Code, Section 1344.

3. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count One, which charges defendant with depositing a stolen and fraudulently endorsed Company A check, drawn on Company A's LaSalle Bank account, bearing check number

17713738, made payable to Individual A, to be deposited into the Guaranty Bank account held in the name of Individual C for further withdrawal.

## Factual Basis

6.     Defendant will plead guilty because he is in fact guilty of Count One of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt and relevant conduct beyond a reasonable doubt:

Defendant Maurice Jackson was employed by Company A, a Chicago-based company serving the commercial advertising industry by providing payment services for its clientele. In this role, Company A issued checks on behalf of its clients to performers and other creative talent. These checks were drawn from a checking account that Company A maintained at LaSalle Bank, a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation.

Defendant worked in Company A's Department of Office Services, first as a Data Control Clerk and then as an Office Services Coordinator. Company A's Department of Office Services was responsible for, among other things, processing checks for Company A's clients. Defendant therefore had access to Company A checks that were to be mailed to performers and other creative talent.

Beginning no later than October 2003 and continuing to on or about August 16, 2004, defendant, without the knowledge and authorization of Company A, stole checks made payable to creative talent, including Individual A and Individual B, from Company A's

Department of Office Services. Defendant fraudulently endorsed a number of the Company A checks he stole. He deposited some of these stolen and fraudulently endorsed Company A checks in a Guaranty Bank account maintained by Individual C from which defendant could withdraw funds. In particular, with respect to Count One of the indictment, on or about September 15, 2003, defendant knowingly caused a stolen Company A check drawn on Company A's LaSalle Bank checking account, bearing check number 17713738, made payable to Individual A, in the amount of $1,624.19 to be deposited into the Guaranty Bank account held in the name of Individual C for further withdrawal.

Defendant further deposited stolen and fraudulently endorsed checks in a Bank One account maintained by defendant Carlton Johnson. Defendant then withdrew funds representing a portion of the value of the stolen Company A checks deposited in Johnson's account. Defendant also provided stolen Company A checks to his brother, defendant Michael Jackson, with whom he deposited those stolen and fraudulently endorsed checks into a Bank One bank account held in the name of Individual D from which defendant and Michael Jackson were able to withdraw funds.

Defendant also provided stolen Company A checks to defendant Sereda Newman to cash. In particular, defendant provided defendant Newman with Company A checks made payable to Individual A and Individual B. Defendant then began altering the payee names of checks he stole from Company A. In particular, defendant altered checks to make them payable to individuals recruited by Newman to cash the stolen checks, including Co-

Schemers 1, 2, 3 and 4. Defendant provided the Company A checks he stole and altered to Newman in return for a portion of their cashed value. Defendant knew these stolen and altered checks would be endorsed and cashed by the fraudulently altered payees.

In total, beginning no later than December 2002 and continuing to on or about August 16, 2004, defendant stole at least 105 checks that should have been paid to well over 10 different payees from Company A with an aggregate value of approximately $102,217. Defendant acknowledges that these checks were either: (1) fraudulently endorsed and negotiated; or (2) altered by defendant to reflect that they were payable to co-schemers who then negotiated the fraudulently altered checks. Defendant further acknowledges that he recruited numerous individuals to participate in his check cashing scheme including Michael Jackson, Carlton Johnson, Sereda Newman, Individual C and Individual D.

### Maximum Statutory Penalties

7.   Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.   A potential maximum sentence of 30 years' imprisonment and a maximum fine of $1,000,000. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation for this count of conviction. Defendant further understands that the judge also may impose a term of supervised release of not more than five years based on this count of conviction.

b.  Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court. The Court also may order restitution to any persons as agreed by the parties.

c.  In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the count to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

8.  Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9.  For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.  **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely, the November 2007 Guidelines Manual.

b.  **Offense Level Calculations.**

i.  The base offense level for bank fraud is seven, pursuant to U.S.S.G. § 2B1.1(a)(1).

5

ii. Defendant's offense level should be increased by eight levels pursuant to U.S.S.G. § 2B1.1(b)(1)(E) because the loss resulting from his offense of conviction and relevant conduct ($102,217) exceeds $70,000.

iii. Defendant's offense level should be increased by two levels pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(i) because his offense and relevant conduct involved ten or more victims.

iv. It is the government's position that defendant's offense level should be increased by two levels pursuant to U.S.S.G. § 3B1.3 because the defendant abused a position of private trust in a manner that significantly facilitated the commission and concealment of the offense. The defendant reserves his right to argue against the applicability of Sentencing Guideline § 3B1.3.

v. Defendant's offense level should be increased by four levels pursuant to U.S.S.G. § 3B1.1(a) because defendant was an organizer and leader of criminal activity that involved five or more participants.

vi. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of U.S.S.G. § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested

financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

    vii. In accord with U.S.S.G. § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by U.S.S.G. § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

  c. **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

  d. **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, according to the government's calculations, the anticipated offense level is 20, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 33 to 41 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

e. Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f. Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

10. The government agrees to recommend that sentence be imposed within the applicable guidelines range and to make no further recommendation concerning at what point within the range sentence should be imposed.

11. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

12. Regarding restitution, the parties acknowledge that with respect to defendant's offense and relevant conduct, the total amount of restitution owed to victims is approximately $102,217, minus any credit for funds repaid prior to sentencing. Defendant agrees to pay restitution, arising from his relevant conduct as set forth above pursuant to Title 18, United States Code, §§ 3663(a)(3) and 3664. Pursuant to Title 18, United States Code, § 3663A, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution in the amount outstanding at the time of sentencing. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing.

13. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

14. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to this defendant.

**Presentence Investigation Report/Post-Sentence Supervision**

15. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

16. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and enhancement of his sentence for obstruction of justice under U.S.S.G. § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

17. For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release to which defendant is

sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

18. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 08 CR 211.

19. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

20. Defendant understands that nothing in this Plea Agreement shall limit the Internal Revenue Service (IRS) in its collection of any taxes, interest or penalties from defendant.

### Waiver of Rights

21. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

        i. The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

        iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant

guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

    iv.  If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

    v.  At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

    vi.  At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

    vii.  At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b.    **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 10 days of the entry of the judgment of conviction.

c.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Other Terms

22.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

### Conclusion

23.    Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

24.    Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the

event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

25. Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

26. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

27. Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 7/27/08

_____
PATRICK J. FITZGERALD
United States Attorney

_____
MAURICE JACKSON
Defendant

_____
JOEL M. HAMMERMAN
Assistant U.S. Attorney

_____
WILLIAM WALTERS
Attorney for Defendant